UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States Commodity Futures
Trading Commission,

     Plaintiff,

v.

Trevor Cook, d/b/a Crown Forex LLC,
Patrick Kiley et al.,

     Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 09-3332 (MJD/FLN)

_____

     Susan Gradman, Counsel for Plaintiff United States Commodity Futures
Trading Commission ("CFTC").

     Defendant Patrick Kiley, *pro se.*

_____

     This matter is before the Court on the CFTC's motion for summary

judgment against Defendant Patrick Kiley d/b/a Crown Forex, LLC, Universal

Brokerage FX and Universal Brokerage FX Diversified (hereinafter "Kiley").

Kiley has not responded to this motion.

## I.    Background

     In 2009, the CFTC brought this action against Kiley and others alleging

violations of the Commodity Exchange Act ("Act").  This Court issued a

Preliminary Injunction enjoining Kiley from committing future violations of the

Act on November 23, 2009.  (Doc. No. 21.)  On December 8, 2009, the Court also

issued an Agreed Order for Preliminary Injunction and other Ancillary Relief

against Kiley.  (Doc. No. 75.)

On July 19, 2011, Kiley, Jason Beckman and Gerald Durand were indicted

on charges of wire fraud, mail fraud, conspiracy to commit mail and wire fraud,

and money laundering.  The criminal charges arose from the same fraudulent

scheme that is at issue in this case.  On June 12, 2012, a jury found the defendants

guilty of the charged offenses.  On July 15, 2013, Kiley was sentenced to a term of

imprisonment of 240 months.

## II.    Undisputed Facts

In support of its motion for summary judgment, the CFTC submitted a

Statement of Undisputed Material Facts.  Kiley has not responded to the motion

for summary judgment or to the facts set forth in the Statement of Undisputed

Material Facts.  Accordingly, the Court adopts the facts as set forth in said

Statement.

Prior to the commencement of this action, Kiley resided in Burnsville,

Minnesota.  He owned and operated a number of business entities: Universal

2

Brokerage FX Advisors, LLC f/k/a UBS Diversified FX Advisors ("UBFXA"),

Universal Brokerage FX Growth, L.P. f/k/a UBS Diversified FX Growth L.P.

("UBFXG"), Universal Brokerage FX Management, LLC f/k/a UBS Diversified FX

Management, LLC ("UBFXM") and UBS Diversified Growth, LLC ("UBSDG").

Neither Kiley nor these entities have been registered with the CFTC in any

capacity.

Kiley, individually and through at least six entities that he has managed

with another individual, engaged in a massive investment fraud, soliciting and

accepting over $190 million from more than 1,000 customers for the purported

purpose of trading forex contracts in so-called managed, segregated accounts.

During June 2008 and July 2009, Kiley and others solicited and accepted $79

million from 556 customers.

Kiley solicited the public to invest in UBFXA, UBFXG, UBFXM and

UBSDG's purported foreign currency arbitrage trading program through a radio

show that he hosted from his home entitled "follow the money, truth seekers."

This program was aimed at Christian audiences and broadcast on numerous

radio stations throughout the country.

Kiley promoted the foreign currency arbitrage trading program by telling

the public that investor funds were held in individual, segregated accounts and that the investments were fully liquid and could be redeemed at any time.  He further claimed the investment earned double digit returns.  Kiley also claimed that customers had access to their funds seven days a week, twenty-four hours a day.  These claims were all false, as most customers were unable to withdraw any of their funds and all of their funds were co-mingled in the same account.

Kiley instructed customers to send money to him at his home for investments in the purported forex arbitrage trading program.  Customers were also told to write checks out to UBS Diversified or other entities that he controlled.  Kiley also advised customers about the tax treatment of the gains they would make, when Kiley knew or recklessly disregarded the fact that there were no gains on the investments.

Kiley controlled the disposition of customer funds and decided which bank accounts the funds would be deposited in and where such funds would be wired to.

Customers received account statements from Kiley's office which purported to reflect their investment status with Kiley.  Kiley also provided customers with account statements via the mail and through the website

www.oxfordeglobalpartners.com.  These statements consistently reflected that customers were earning 10-12% per year with no losses.  These statements were false, as the investments did not earn such profits.  The false statements induced others, however, to make additional investments with Kiley.

Kiley represented to certain customers that their funds would be deposited in so-called managed, segregated accounts and/or used to trade forex at Crown Forex SA, a Swiss forex trading entity.  Customers were instructed to send their funds to a bank account entitled "Crown Forex."  Kiley and others intentionally or recklessly failed to disclose to customers that the Crown Forex account was not a bank account controlled by Crown Forex SA.  Rather, the account was listed in the name of Crown Forex LLC and carried at Associated Bank in Minnesota. The signatories to this account were Kiley and his assistant.

Approximately $79 million in customer funds were deposited into the Crown Forex LLC account.  None of those funds were sent to Crown Forex SA. Nonetheless, Kiley and others issued statements to customers that falsely reported that their funds were invested in Crown Forex SA and were consistently profitable.  Even after Kiley and others learned that Crown Forex SA had significant financial problems, Kiley and others continued to promote the Crown

Forex SA investment.

By May 2009, the Swiss Financial Market Supervisory Authority ("FINMA") placed Crown Forex SA into bankruptcy and prohibited it from accepting any additional funds for forex trading.  On July 30, 2009, Crown Forex SA posted on its website that it had not accepted any new accounts since December 2008, its activities were suspended as of May 10, 2009, it was in liquidation and did not hold any segregated bank accounts, and that account statements with false account numbers may have been issued in the name of Crown Forex SA in favor of persons who are not registered as clients of Crown Forex SA.

Despite knowledge of the above, Kiley and others did not advise their customers or prospective customers of the investigation or its impact on Crown Forex SA and instead represented to customers that Crown Forex SA was financially sound and a good place to invest.

In or about June 2009, Kiley began telling some customers of a new custodian for their purported forex arbitrage trading program assets called Basel Group.  Kiley and others began telling customers that the purported currency program was being offered by Basel Group, and that they should either make

their investment checks payable to Basel or wire their assets to a bank account held in the name of Basel Group, LLC.  Basel Group LLC was simply a name Kiley used to open a bank account for the deposit of customers checks.  At least $500,000 of customer funds was transferred to the Basel Group LLC at Associated Bank.

From January 2009 through July 2009, Kiley and others raised approximately $32.7 million from customers by representing that their money would be deposited in Switzerland at Crown Forex SA.

Customers did not learn of Crown Forex SA's financial problems until July 2009.  When they sought to withdraw their money, the customers were paid with funds from domestic accounts controlled by Kiley and others.

None of the funds deposited into the Crown Forex LLC account were sent to Crown Forex SA.  Instead, the money was used for Kiley's and others' business and personal expenses.  For example, from July 3, 2008 to July 3, 2009, $12,019,000 was used to purchase property in Panama to fund the development of a hotel and casino.  In addition, between June 18, 2009 and July 18, 2009, Kiley misappropriated $433,449.97 of customer funds for his personal benefit.

## III.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).  The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.  1995).

## IV.     Violations of the Act

The CFTC has asserted two counts against Kiley in the Complaint.  In Count One, the CFTC alleges that Kiley cheated, defrauded and deceived or attempted to cheat, defraud or deceive his retail customers by making

misrepresentations and/or failing to disclose material facts to his retail forex

customers and by misappropriating their funds in violation of 7 U.S.C. §§ 6b

(a)(2)(A) and (C).  The CFTC further alleges that Kiley, directly or indirectly,

controls UBFXA, UBFXG, UBFXM and UBSDG and did not act in good faith or

knowingly induced, directly or indirectly, their conduct alleged in Count One.

In Count Two, the CFTC alleges that Kiley made or caused to be made

false account statements that were issued to some customers who invested

money with him in violation of 7 U.S.C. § 6b (a)(2)(B).  The CFTC further alleges

that Kiley, directly or indirectly, controls UBFXA, UBFXG, UBFXM and UBSDG

and did not act in good faith or knowingly induced, directly or indirectly, their

conduct alleged in Count Two.

### A.    Jurisdiction

Pursuant to Section 2(c)(2)(c) of the Act, as amended, the CFTC has

jurisdiction over forex transactions if three criteria are met: 1) the transactions are

offered to, or entered with, a person who is not an eligible contract participant on

a leveraged or margined basis, or financed by the offeror or counterparty on a

similar basis; 2) the transactions do not result in actual delivery within two days

or otherwise create an enforceable obligation to deliver between a seller and

buyer who have the ability to deliver and accept delivery, respectively, in

connection with their line of business; and 3) neither the counterparty to the

transactions nor the defendant is one of certain enumerated persons.  7 U.S.C. §

2(c)(2)(C)(i) and (ii).

In this case, all three criteria are met.  Some or all of the customers were not

eligible contract participants, which are defined in the Act as an individual who

has amounts invested on a discretionary basis, the aggregate of which exceeds

$10 million, or $5 million if the individual entered into the transaction to mange

the risk associated with an asset owned or liability incurred or reasonably likely

to be owned or incurred by that individual.  7 U.S.C. § 1a (18)(A)(iv) and (xi).

Also, the forex transactions did not result in actual delivery of any foreign

currency within two days or otherwise.  Finally, neither the defendants nor any

of their counterparts are among the certain enumerated persons exempted from

the application of Section 2(c)(2)(C) of the Act - such as financial institutions,

registered brokers or dealers, insurance companies, financial holding companies

and investment bank holding companies, and to associated persons of such

institutions, brokers or dealers.  7 U.S.C. § 2(c)(2)(B)(i)(II).

## B.    Collateral Estoppel

"It is well established that prior criminal proceedings can work an estoppel in a subsequent civil proceeding, so long as the question involved was 'distinctly put in issue and directly determined' in the criminal action."  SEC v. Gruenberg, 989 F.2d 977, 978 (8th Cir. 1993) (quoting McNally v. Pulitzer Publishing Co., 532 F.2d 69, 76 (8th Cir.), cert. denied, 429 U.S. 855 (1976)); SEC v. Blackwell, 477 F. Supp.2d 891, 899 (S.D. Ohio 2007).

The evidence introduced at Kiley's criminal trial further supports the CFTC's claims in this case.  Thus, even if Kiley had opposed this motion, he is estopped from disputing facts which support the CFTC's claims, as they were "'distinctly put in issue and directly determined' in the criminal action." Gruenberg at 978.

## C.    Fraud in Connection with Forex

The CFTC asserts that Kiley, through misrepresentations and omissions of material fact and misappropriations, violated Sections 6b (a)(2)(A)-(C) of the Act. As set forth in the Statement of Undisputed Material Facts, Kiley defrauded and deceived members of the public through fraudulent misrepresentations regarding profit potential and risk of loss in trading forex and by failing to

disclose actual trading losses and misappropriation.

To establish liability under the Act, the CFTC has the burden of proving: 1) the making of a misrepresentation; 2) scienter; and 3) materiality.  CFTC v. RJ Fitzgerald & Co., 310 F.3d 1321, 1328 (11th Cir. 2002).  "[S]cienter is established if Defendant intended to defraud, manipulate, or deceive, or if Defendant's conduct represents an extreme departure from the standards of ordinary care."  Id.  "A misrepresentation is 'material' if a reasonable investor would consider it important in deciding whether to make an investment."  Id. at 1328-29.

In this case, the evidence demonstrates that Kiley's overall message was that customers would earn 10 to 12% annual profits with no risk of loss.  Kiley then misrepresented his and others' trading performance and provided false account information to customers and failed to disclose that their funds would not be used for forex trading.

The evidence further demonstrates that Kiley acted with the requisite scienter because he knew his representations were false.  He knew the statements that funds would be traded at Crown Forex SA in Switzerland were false because the $79 million solicited from investors was not sent to Crown Forex SA.  Instead, the funds were deposited in domestic bank accounts by Kiley and others.  In

12

addition, Kiley continued to solicit and accept customer funds after he knew that

FINMA had prohibited Crown Forex SA from accepting new customers.  He also

knew that the representations as to trading performance were false because he

and others did not achieve such profits.  Finally, Kiley knew that he and others

misappropriated customer funds because he and others used funds for purposes

other than forex trading.

The evidence also demonstrates that Kiley made or caused to be made false

statements to misrepresent the value of the customers' investments, in violation

of § 6b (a)(2)(B) of the Act.  <u>See</u> Undisputed Fact Statement Nos. 18-20.

The evidence further demonstrates that Kiley misappropriated customer

funds to pay personal expenses, such as credit card bills, legal fees and to finance

a casino in Panama.  Such misappropriation violates § 6b (a) of the Act.  <u>CFTC v.</u>

<u>Morse</u>, 762 F.2d 60, 62 (8th Cir. 1985) (finding that evidence of misappropriation

of customer funds established violation of § 6b of the Act).

Based on the above, the Court finds that the CFTC has demonstrated it is

entitled to summary judgment as to both counts in the Complaint against Kiley

d/b/a Crown Forex LLC, Universal Brokerage FX and Universal Brokerage FX

Diversified.

## V.     Remedies

### A.     Permanent Injunction

The CFTC asserts that based on Kiley's numerous violations of the Act, it is

entitled to permanent injunctive relief.  The Act authorizes the CFTC to seek

injunctive relief:

> Whenever it shall appear to the Commission that any registered entity or
> other person has engaged, is engaging, or is about to engage in any act or
> practice constituting a violation of any provision of this chapter or any
> rule, regulation, or order thereunder, or is restraining trading in any
> commodity for future delivery or any swap, the Commission may bring an
> action in the proper district court of the United States or the proper United
> States court of any territory or other place subject to the jurisdiction of the
> United States, to enjoin such act or practice, or to enforce compliance with
> this chapter, or any rule, regulation or order thereunder, and said courts
> shall have jurisdiction to entertain such actions: *Provided*, That no
> restraining order (other than a restraining order which prohibits any
> person from destroying, altering or disposing of, or refusing to permit
> authorized representatives of the Commission to inspect, when and as
> requested, any books and records or other documents or which prohibits
> any person from withdrawing, transferring, removing, dissipating, or
> disposing of any funds, assets, or other property, and other than an order
> appointing a temporary receiver to administer such restraining order and
> to perform such other duties as the court may consider appropriate) or
> injunction for violation of the provisions of this chapter shall be issued ex
> parte by said court.

7 U.S.C.A. § 13a-1.

Once a violation has been determined, the moving party need only show

14

there is some reasonable likelihood of future violations.  CFTC v. Hunt, 591 F.2d 1211, 1220 (7th Cir. 1979).  There is no need to show irreparable injury or the inadequacy of other remedies.  CFTC v. Muller, 570 F.2d 1296, 1300 (5th Cir. 1978).  The district court has broad discretion to fashion appropriate relief.  Id. Previous violations suggest a likelihood of future violations, especially where the violation is founded on systemic wrongdoing.  Hunt, 591 F.2d at 1220.

The Court finds that the CFTC is entitled to permanent injunctive relief, based on Kiley's numerous violations of the Act.  Such violations were not isolated occurrences; rather, Kiley, individually and with others, repeatedly misrepresented his and others success trading commodity futures and that customer funds would be placed in segregated accounts and deposited at Crown Forex SA for the purpose of trading between June 2008 and July 2009.  Finally, Kiley also misappropriated over $13 million in customer funds during that time.

## B.    Disgorgement

The CFTC asks the Court to order Kiley to disgorge the monetary benefits of his unlawful activity based on the evidence that from June 2008 through July 2009, Kiley received $13,233,449.97 as a result of the fraudulent scheme and should be ordered to disgorge that amount.

The CFTC notes that the SEC is seeking disgorgement of $155,928,583 for the same conduct at issue in this case as well as additional conduct. Consequently, the CFTC asks that any disgorgement that Kiley pays to the SEC that exceeds $142,695,133.03 should result in a dollar for dollar reduction of his disgorgement obligation in this matter.

The Court will grant the CFTC's request for disgorgement.  See CFTC v. Am. Metals Exchange Corp., 991 F.2d 71, 76 (3d Cir. 1993) (finding that disgorgement is an appropriate remedy for violations of the Act in order to deprive wrongdoer of his ill-gotten gains and to deter violations of the law).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff United States Commodity Futures Trading Commission's Motion for Summary Judgment [Doc. No. 1130] is **GRANTED** and is entitled to the following relief:

## PERMANENT INJUNCTION

Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Kiley is permanently restrained, enjoined, and prohibited from directly or indirectly: Cheating or defrauding, or attempting to cheat or defraud, other persons; willfully making, or causing to be made, any false report or statement to other

persons; or willfully deceiving, or attempting to deceive, other persons, in or in

connection with any order to make, or the making of, any contract of sale of any

commodity for future delivery, or swap, that is made, or to be made, other than

on or subject to the rules of a designated contract market, for, on behalf of, or

with such other persons, in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C.

§ 6b(a)(2)(A)-(C).

Defendant Kiley is also permanently restrained, enjoined, and prohibited

from directly or indirectly:

1. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012));

2. Entering into any transactions involving "commodity interests" as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014), for Kiley's own personal account(s) or for any account in which he has a direct or indirect interest;

3. Having any commodity interests traded on his behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

6. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013); and/or

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2013)), agent, or any other officer or employee of any

person (as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012)) registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2013).

## DISGORGEMENT

The Court finds that an order of disgorgement of all monetary benefits Defendant Kiley derived from his fraudulent activity is merited.  From June 18, 2008 through July 2009, Kiley received $13,233,449.97 as a result of the fraudulent scheme and is ordered to disgorge that amount.  The Securities and Exchange Commission ("SEC") is seeking disgorgement of $155,928,583 from Kiley for the same conduct at issue in this case as well as additional conduct occurring prior to the relevant time period here.  See U.S. Securities and Exchange Commission v. Trevor G. Cook et al., Case No. 09-cv-3333 (MJD/FLN)(Filed November 23, 2009) Consequently, any disgorgement that Kiley pays to the SEC that exceeds $142,695,133.03 shall result in a dollar for dollar reduction of Kiley's disgorgement obligation in this matter.

Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined at the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

18

## MISCELLANEOUS PROVISIONS

No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against Defendant Kiley in any other proceeding.

Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of Defendant Kiley who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order, to ensure continued compliance with any provision of this Order, and to hold Kiley in contempt for any violation of a provision of this Order.

Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Deputy Director
Division of Enforcement – Central Region
U.S. Commodity Futures Trading Commission
525 West Monroe, Suite 1100
Chicago, Illinois  60661

Notice to Defendants:

Patrick Kiley
C/O David E Zins
Attorney at Law

5353 Gamble Dr Ste 125
Mpls, MN 55416
952-544-1577
Fax: 952-546-9239
Email: dezinslaw@aol.com

All such notices to the Commission shall reference the name and docket number of this action.

Change of Address/Phone:  In the event that Defendant Kiley changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address(es) to the Commission within twenty (20) calendar days thereof.

Amendments:  Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

Invalidation:  If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes

related to this action, including any motion by Defendant Kiley to modify or for

relief from the terms of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

**Date:    January 12, 2016**

s/ Michael J. Davis
Michael J. Davis
United States District Court
